UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| J. PEARSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-03045-JRS-DML ) |
| CHARLES WILEY Sgt., et al. | ) ) |
| Defendants. | ) |

**ENTRY DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DIRECTING FURTHER PROCEEDINGS**

For the reasons explained in this Entry, the plaintiff's motion for partial summary judgment, dkt. [66], is **denied.**

## I. Background

Indiana prisoner Justin Pearson brings this 42 U.S.C. § 1983 civil rights action against several correctional officers. Mr. Pearson seeks summary judgment against one defendant, Sgt. Jason Griffith. He alleges that Sgt. Griffith acted with deliberate indifference to his serious medical needs when he turned off water to Mr. Pearson's cell after being sprayed with O.C. spray. Dkt. 22.

Sgt. Griffith responded to Mr. Pearson's motion for summary judgment and Mr. Pearson replied. The motion for partial summary judgment is fully briefed.

## II. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted).

"A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Education, Inc.,* 906 F.3d 621, 628 (7th Cir. 2018). The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hospitals Corp.* 892 F.3d 887, 893 (7th Cir. 2018).

### III. Discussion

#### A. Undisputed Facts

On the basis of the pleadings and the expanded record, and specifically on the portions of that record that comply with the requirements of Rule 56(c)(1), the following facts are undisputed for purposes of Mr. Pearson's motion for summary judgment against Sgt. Griffith and all permissible inferences will be drawn in Sgt. Griffith's favor.

At approximately 3:45 pm on September 4, 2018, an offender flooded range 1-D of G-cell house at Pendleton Correctional Facility. Dkt. 67 at 9. The Incident Report submitted by Mr. Pearson states that Sgt. Griffith and another officer walked down the range and learned the identity of the offender responsible for the flooding. *Id.* Other offenders showed Sgt. Griffith cups of feces and said, "if you spray that man we're gonna throw shit on you." *Id.* Sgt. Griffith called for other staff assistance and left the range to go shut off water and power to the range. *Id.*

At approximately 3:55 pm, Sgt. Wiley arrived and while walking through the range an offender threw bodily fluids on him. Dkt. 74-1 at 1-2. As Sgt. Wiley was leaving the range, two

more offenders threw bodily fluids at him, one of whom was identified as Mr. Pearson. *Id.* Sgt. Wiley applied O.C. spray to each offender who threw bodily fluids at him. *Id.*

Sgt. Griffith was not present when Sgt. Wiley sprayed Mr. Pearson. Dkt. 67 at 7. Sgt. Griffith heard some offenders yelling but he did know who because numerous offenders were trying to lure officers back onto the range. Dkt. 67 at 7. Sgt. Griffith was not aware that Mr. Pearson was having difficulty breathing as a result of the O.C. spray. Dkt. 74-4 at 6.

At approximately 6:30 pm, Mr. Pearson was seen by a nurse to evaluate him. Dkt. 74-3. Mr. Pearson was screaming to get out of the "shakedown booth" to shower. *Id.* The nurse reported "no s/s of distress" but a small red area was noted on his left elbow. *Id.*

### B. Discussion

To satisfy an Eighth Amendment violation, a prison's deprivation must be an "objectively, 'sufficiently serious'... denial of the minimal civilized measure of life's necessities,'" and the state actor "must have a sufficiently culpable state of mind.'" *Reed v. Palmer*, 906 F.3d 540, 550 (7th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "An Eighth Amendment violation has both an objective and subjective component." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018). "First, the deprivation alleged must be objectively, sufficiently serious. Second, the mental state of the prison official must have been one of deliberate indifference to inmate health and safety." *Id.* (internal quotation omitted). "Under the subjective component, [the plaintiff] must present evidence raising a triable issue of fact that [the defendant] knew of and consciously disregarded an excessive risk to his health and safety." *Id.*; *see also Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017) ("The plaintiff must show that the defendant acted or failed to act in a way that disregarded an excessive risk of harm to the inmate; he does not need to show that the defendant intended or desired to cause harm.").

"To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). "[T]he Supreme Court has instructed us that a plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id.* "Officials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety." *Id.*

Mr. Pearson alleges that after Sgt. Wiley sprayed him with O. C. spray, Mr. Pearson realized that the water in his cell had been turned off and he could not wash himself off. He argues that because Sgt. Griffith has admitted to turning off the water and he knew Mr. Pearson was not the one who flooded the range, Sgt. Griffith was deliberately indifferent to his suffering from the effects of the O.C. spray by not turning his water back on.

Sgt. Griffith responds that Mr. Pearson has failed to present evidence demonstrating that Mr. Pearson suffered from an objectively serious medical condition and that Sgt. Griffith was aware of that condition.

"The courts have routinely held that the lingering effects of being pepper-sprayed or exposed to similar chemical agents are not objectively serious medical conditions." *Buchanan v. Pfister*, No. 17-cv-8075, 2018 WL 4699778, at *7 (N.D. Ill. Oct. 1, 2018) (collecting cases). This Court has also recognized that symptoms caused by exposure to gas or smoke such as breathing problems, vomiting, crying, sneezing, headache, respiratory stress, and wheezing are "'objectively speaking, relatively minor.'" *Kadamovas v. Caraway*, No. 2:17-cv-00050-WTL-MJD, 2018 WL 6415588, at *12 (S.D. Ind. Dec. 6, 2018) (quoting *Henderson v. Sheahan,* 196. F.3d 839, 846 (7th Cir. 1999)), *aff'd on subjective component,* 775 F. App'x. 242 (7th Cir. 2019). While the exposure to the spray itself does not create a lingering condition requiring medical treatment, there are conditions under which the refusal to allow an inmate to flush out his eyes after being sprayed

could amount to a constitutional violation under the Eighth Amendment. *See Kervin v. Barnes,* 144 F. App'x. 551, 552 (7th Cir. 2005) ("detaining an inmate for eight hours after using chemical agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering."); *Hughes v. Durrent*, No. 15-C-6432, 2017 WL 3978702, at *10 (N.D. Ill. Sept. 11, 2017) (distinguishing between the initial spray and knowingly refusing to allow inmates to flush their eyes contrary to the direction of medical staff).

Mr. Pearson alleges that he had difficulty breathing after he was sprayed for throwing feces on another officer, but there is no evidence as to how long the effects of the chemical spray lasted. The form signed by Mr. Pearson on September 4, 2018, regarding the use of O.C. spray informed him that "O.C. is non-toxic and the effects will dissipate in a short time." Dkt. 74-2. In this case, the only evidence relating to Mr. Pearson's physical condition is that when he was seen by a nurse within a couple hours of being sprayed, he wanted to shower but she noted no serious injury and no signs of distress. Reviewing the evidence and drawing all inferences in the light most favorable to Sgt. Griffith as the non-movant, a reasonable jury could find that any injury to Mr. Pearson was not "objectively serious."

Even if Mr. Pearson did suffer an objectively serious condition, he has failed to show that Sgt. Griffith was aware of it. Before Sgt. Griffth left the range, he was threatened by offenders that if he sprayed the offender who caused the flooding, they would throw bodily fluids on him. Sgt. Griffith left the range to turn off the water and power to the range because the range had been flooded. Dkt. 67 at 9. Mr. Pearson argues that the water should have only been turned off to the cell of the offender who did the flooding. Dkt. 82. Mr. Pearson's opinion as to how prison officials should have responded to the chaotic circumstances does not constitute evidence sufficient to create a material fact in dispute.

Also, Sgt. Griffith was not even on the range when another officer sprayed inmates who were throwing bodily fluids. Sgt. Griffith admits to hearing numerous inmates later yelling for help, but he did not know who they were and he had reason to believe that offenders wanted to assault him with bodily fluids if he returned to the range.

Here, it is not known when Sgt. Griffith became aware that Mr. Pearson was sprayed, but regardless of when he knew that, there is no evidence showing that Sgt. Griffith had actual knowledge that Mr. Pearson suffered a substantial injury. *See Kadamovas,* 775 F. App'x. at 244 ("Kadamovas believes that the defendants could have been more vigilant in minimizing the effects of gas and smoke, but presents no evidence that their efforts approached criminal recklessness."). A reasonable jury could conclude that Sgt. Griffith did not have actual knowledge of any substantial harm to Mr. Pearson, much less that he was deliberately indifferent to it even if any such harm did exist.

### IV. Conclusion

For the reasons discussed above, Mr. Pearson's motion for partial summary judgment as to the claim against Sgt. Griffith, dkt. [66], is **DENIED.**

### V. Updated Notices on Settlement

No other dispositive motions have been filed in this case and the deadline to do so has passed. This action will be resolved by settlement or trial. The parties shall have **through February 5, 2020,** to **file an amended notice** with the Court stating whether they believe a settlement conference with the Magistrate Judge would be beneficial in resolving this action.

**IT IS SO ORDERED.**

Date: 1/22/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

J. PEARSON
143421
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Bryan Findley
INDIANA ATTORNEY GENERAL
bryan.findley@atg.in.gov

Brandon Alan Skates
INDIANA ATTORNEY GENERAL
brandon.skates@atg.in.gov